1

72fibelp ag                    PLEA

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                          07 Cr. 123 CLB LMS

5   ANTHONY BELLETTIERI,

6                 Defendant.

7   ------------------------------x

8                                       February 15, 2007
                                        3:00 p.m.
9                                       White Plains, N.Y.

10  Before:

11                    HON. LISA M. SMITH,

12                                  Magistrate Judge

13                        APPEARANCES

14  MICHAEL J. GARCIA
         United States Attorney for the
15       Southern District of New York
    CYNTHIA DUNNE
16       Assistant United States Attorney

17  MURRAY RICHMAN
         Attorney for Defendant

18

19  VINCENT ADAMS, Pretrial Services

20  CATHERINE McFADDEN, FBI

21

22                          PLEA

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

72fibelp ag                    PLEA

1          THE COURTROOM DEPUTY:  United States v. Anthony

2    Bellettieri.

3          MS DUNNE:  Cynthia Dunne for the government.

4          MR. RICHMAN:  Murray Richman for Anthony Bellettieri.

5          MS DUNNE:  With me at counsel table is FBI agent Cathy

6    McFadden.

7          THE COURT:  Good afternoon.

8          Mr. Bellettieri, I want to advise you that this is not

9    a trial.  It is my understanding that you have decided to enter

10   a plea of guilty in this case, and this proceeding is for the

11   purpose of insuring that you are aware of all of your rights in

12   connection with that plea, and that any waiver of those rights

13   is knowing and voluntary prior to entering your plea of guilty

14   if you still decide to do that.

15         If at any time you do not hear or understand what I

16   say to you, I want you to interrupt me so I can repeat and

17   explain what I said, and so that you can have an opportunity to

18   consult with Mr. Richman to make sure that you have heard and

19   understood everything I have said and everything I've asked

20   you.  Do you understand that?

21         THE DEFENDANT:  Yes, your Honor.

22         THE COURT:  And will you do that, sir?

23         THE DEFENDANT:  Yes, I will.

24         THE COURT:  Mr. Richman, has your client previously

25   appeared on the complaint?

3

72fibelp ag                    PLEA

1        MR. RICHMAN:  No, your Honor.

2        THE COURT:  Mr. Bellettieri, I want to advise you that

3   you have an absolute right to remain silent at this and at

4   every stage of the proceedings.  Any statement that you do make

5   may be used against you.  You have this right to remain silent

6   even if you have already made statements to law enforcement

7   officers, and you're not required to answer any questions that

8   law enforcement officers ask you from this moment on.  Do you

9   understand that?

10       THE DEFENDANT:  Yes, your Honor.

11       THE COURT:  You have an absolute right to be

12  represented by counsel at this and at every stage of the

13  proceedings against you including during any questioning by the

14  authorities, any lineup and any court proceedings including

15  this one.  And you have the right to consult with your attorney

16  prior to answering any questions.  Do you understand that?

17       THE DEFENDANT:  Yes, your Honor.

18       THE COURT:  For that reason you should consult with

19  your attorney before answering any further questions including

20  questions that I'm going to ask you during this proceeding.  Do

21  you understand that?

22       THE DEFENDANT:  Yes, your Honor.

23       THE COURT:  Mr. Richman, should I assume that you're

24  retained in the matter?

25       MR. RICHMAN:  I am.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

72fibelp ag                    PLEA

1      THE COURT:  If you were to become unable to afford

2   your attorney's services, you would be entitled to apply to the

3   Court for a new attorney to represent you, and if the Court was

4   then satisfied that you could not afford to hire a lawyer and

5   that there was an appropriate reason to relieve your current

6   lawyer, a new lawyer would be appointed to represent you with

7   no cost to you.  Do you understand that?

8      THE DEFENDANT:  Yes, your Honor.

9      THE COURT:  Ms deJesus, would you place the defendant

10  under oath, please.

11      (Defendant sworn)

12  BY THE COURT:

13  Q.  It is important for you to understand that if you knowingly

14  make a false statement during these proceedings, you could be

15  subject to prosecution for the crime of perjury or for making a

16  false statement to the Court and you could face a punishment of

17  up to five years imprisonment and a $250,000 fine for

18  committing such a crime.  Such punishment would be separate and

19  apart from any sentence you may be facing on the crime charged

20  in the felony information.  Do you understand that?

21  A.  Yes, your Honor.

22  Q.  What's your full name, sir?

23  A.  Anthony Bellettieri.

24  Q.  How old are you?

25  A.  53.

72fibelp ag                    PLEA

1   Q.  Do you read, write, speak and understand the English

2   language?

3   A.  Yes, I do.

4   Q.  How far did you go in school?

5   A.  JD degree.

6   Q.  Have you ever been hospitalized or treated for narcotic or

7   alcohol addiction?

8   A.  No, your Honor.

9   Q.  Have you today or at any other time in your life taken or

10  used any drugs, marijuana, alcohol, medication or any other

11  substance which is currently affecting your ability to think or

12  to understand these proceedings that are going on here today?

13  A.  No, your Honor.

14          THE COURT:  Mr. Bellettieri, you're charged in this

15  felony information with one count of bank fraud and one count

16  of mail fraud.

17          Ms deJesus, would you arraign the defendant on the

18  waiver of indictment, please.

19  BY THE COURTROOM DEPUTY:

20  Q.  Are you Anthony Bellettieri?

21  A.  Yes.

22  Q.  Have you signed this waiver of indictment which I have

23  right here?

24  A.  Yes, I have.

25  Q.  Have you signed it voluntarily?

72fibelp ag                    PLEA

1   A.  Yes, I have.

2   Q.  Before signing this waiver, did you discuss it with your

3   attorney?

4   A.  Yes, I did.

5   Q.  Did your attorney explain this waiver to you?

6   A.  Yes, he did.

7   Q.  Do you understand that you are under no obligation to waive

8   indictment?

9   A.  Yes, I do.

10  Q.  Do you understand that if you don't waive indictment and if

11  the government wants to prosecute you, they would have to

12  present your case to a grand jury which may or may not indict

13  you?

14  A.  Yes, I do.

15  Q.  Do you understand what a grand jury is?

16  A.  Yes, I do.

17  Q.  Have you seen a copy of the felony information?

18  A.  Yes, I have.

19  Q.  Do you waive its public reading?

20  A.  Yes, I do.

21       THE COURT:  For purposes of this preliminary

22  proceeding, Mr. Richman, your client enters a plea of not

23  guilty?

24       MR. RICHMAN:  That's correct.

25       THE COURT:  It is a Wheel B case but before a district

72fibelp ag          PLEA

1   judge is selected, Ms Dunne, what's the government's position

2   with regard to bail?

3        MS DUNNE:  The government's position with regard to

4   bail is, subject to the Court's approval, we have negotiated a

5   bail package with the defense attorney's consent which would be

6   a $500,000 PRB co-signed by the defendant's wife and secured by

7   their residence.  And I will say just with regard to that

8   issue, Mr. Bellettieri has come in and met with us voluntarily

9   on numerous occasions and has actually been cooperating with us

10  in trying to resolve this expeditiously.  And we have no reason

11  to believe he's any risk of flight at this time.

12       THE COURT:  And you would have no objection to him

13  remaining at liberty pending the time necessary to post the

14  residence?

15       MS DUNNE:  I think we've agreed within a week they'll

16  have all the paperwork processed.  And also we'd like to have

17  his passport surrendered, however.

18       MR. RICHMAN:  We've already surrendered the passport.

19       MS DUNNE:  I withdraw that.  They already surrendered

20  the passport.

21       THE COURT:  Limitations on travel?

22       MR. RICHMAN:  New York area, Eastern and Southern

23  Districts, your Honor.

24       THE COURT:  That's the standard.  No need for Pretrial

25  Services supervision, Ms Dunne?

72fibelp ag                    PLEA

1      MS DUNNE:  Not that I know of.  I've spoken with the

2   Pretrial Service officer who took him in and did the intake on

3   him and I believe they did not see any need for supervision.

4      THE COURT:  And Mr. Richman, has your client been

5   processed by the marshal?

6      MR. RICHMAN:  Yes, he has, your Honor.

7      THE COURT:  Thank you.  Mr. Richman, are you in

8   agreement with the package that Ms Dunne has indicated?

9      MR. RICHMAN:  Yes, your Honor.

10      THE COURT:  I will release the defendant on a $500,000

11   personal recognizance bond to be co-signed by his wife

12   Antoinette Bellettieri to be secured by the personal residence,

13   the defendant to be released on his own signature.  The

14   co-signature and the documents necessary for securing the bond

15   with the real property is to be filed within one week of today.

16   The government is to retain possession of the defendant's

17   passport.  Pending the resolution of this matter, the defendant

18   is prohibited from obtaining any new travel documents, and

19   during the period of release, travel is restricted to the

20   Southern and Eastern District of New York.

21   BY THE COURT:

22   Q.  Mr. Bellettieri, you would need to obtain the Court's

23   permission if you must travel outside those areas for any

24   reason.  In order to do that, you notify Mr. Richman, he'll

25   notify Ms Dunne and me and we'll determine whether it's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

72fibelp ag                    PLEA

1   appropriate for you to travel outside of the Southern and

2   Eastern Districts of New York.  That requires some lead time so

3   you need to make sure that you let him know.

4          This is a setting of bail which means upon your

5   release you must refrain from committing any violations of law

6   whatsoever, including federal, state and local crimes.  If you

7   commit a felony while you are on release for this crime you may

8   be subject to an additional prison term of ten years in

9   addition to what you're facing on this charge and on the new

10  charge.  If you commit a misdemeanor while you're on release,

11  the additional prison term would be up to one year.  If you

12  violate any of the conditions of release your bail may be

13  immediately revoked and you may be detained pending sentencing

14  in the matter.  In addition, you may be prosecuted for contempt

15  of court.  If you fail to appear in court when you are required

16  to do so, you may be committing the crime of bail-jumping which

17  would subject to an additional punishment separate and apart

18  from the penalties you're facing here.  The penalty for bail

19  jumping in this case is imprisonment for up to ten years and a

20  $250,000 fine.

21         Do you understand that, stir?

22  A.  Yes, I do, your Honor.

23         THE COURT:  Ms deJesus, it is a Wheel B case.  May we

24  have a card, please?

25         THE COURTROOM DEPUTY:  Yes, your Honor.

72fibelp ag          PLEA

1          THE COURT:  The matter is assigned to Judge Brieant.

2   The instructions of Judge Brieant are where there is an

3   agreement to enter a guilty plea, the plea may be entered

4   before me on the consent of the parties.

5          I have before me a plea agreement dated February 13,

6   2007.  Mr. Richman, is it your client's wish to proceed before

7   me?

8          MR. RICHMAN:  Yes, your Honor.

9   BY THE COURT:

10  Q.  Mr. Bellettieri, this proceeding is referred to as a plea

11  allocution.  You have the absolute right to have this plea

12  allocution conducted before a United States district judge.  It

13  is the district judge, in this case Judge Brieant, who will

14  impose sentence in your case.  If you consent and if you agree,

15  then I will conduct the plea allocution and I will then make a

16  report to Judge Brieant in which I will recommend whether or

17  not he should accept your plea of guilty.  I will make that

18  recommendation based on the information that is brought out

19  during today's proceedings.

20         It is important for you to understand that the Court

21  will not accept your plea unless the Court is satisfied that

22  you fully understand all of your rights and that you are in

23  fact guilty.  Do you understand that?

24  A.  Yes, I do, your Honor.

25  Q.  Do you understand that you have an absolute right to have

72fibelp ag               PLEA

1   this plea allocution conducted before a United States district

2   judge?

3   A.  Yes, I do, your Honor.

4   Q.  Do you agree and is it your wish that I should conduct the

5   plea allocution?

6   A.  Yes, your Honor.

7           THE COURT:  Ms deJesus, would you have the defendant

8   identify his signature on the consent form, please?

9           THE COURTROOM DEPUTY:  Yes, your Honor.

10          Mr. Bellettieri, I show you this document entitled:

11  Consent to proceed before a United States magistrate judge.  Is

12  that your signature here.

13          THE DEFENDANT:  Yes.

14          THE COURTROOM DEPUTY:  Dated today, February 15, 2007?

15          THE DEFENDANT:  Yes.

16  BY THE COURT:

17  Q.  Mr. Bellettieri, did you read the form before you signed

18  it?

19  A.  Yes, I did, your Honor.

20  Q.  Did you discuss it with your attorney?

21  A.  Yes, I did, your Honor.

22  Q.  Did anybody threaten you or coerce you or promise you

23  anything in order to get you to sign the consent form?

24  A.  No, your Honor.

25  Q.  Did you sign the form freely and voluntarily and of your

72fibelp ag                    PLEA

1   own free will?

2   A.  Yes, your Honor.

3            THE COURT:  Mr. Richman, are you aware of any reason

4   why the waiver and consent to proceed with a felony plea

5   allocution before a United States magistrate judge should not

6   be accepted?

7            MR. RICHMAN:  I am not.

8            THE COURT:  I find that Anthony Bellettieri is fully

9   competent and capable of waiving his right to appear before a

10  United States district judge in order to enter his plea of

11  guilty.  I therefore accept the consent form which has been

12  signed and which will remain part of the Court's record as

13  Court's Exhibit 1.

14  Q.  Mr. Bellettieri, do you understand that your right to be

15  represented by an attorney continues through every stage of the

16  proceedings including trial and appeal, and that you have this

17  right whether or not you choose to plead guilty to these

18  offenses?

19  A.  Yes, I do, your Honor.

20  Q.  Have you had sufficient opportunity to consult with

21  Mr. Richman about your case and especially about your decision

22  to plead guilty?

23  A.  Yes, I have, your Honor.

24  Q.  Are you satisfied with the services which he has provided

25  to you?

72fibelp ag               PLEA

1    A.   Yes, I am, your Honor.

2    Q.   Have you told him everything you know about this case?

3    A.   Yes, I have, your Honor.

4         THE COURT:  I have before me a copy of the plea

5    agreement dated February 13, 2007.  The original plea agreement

6    should be marked as -- I'm sorry, the consent to proceed is

7    Court's Exhibit 2 so this will be Court's Exhibit 3.  The

8    original should be marked as Court's Exhibit 3 and should

9    remain in the custody of government counsel.

10        Ms deJesus, would you have the defendant identify his

11   signature on the last page of the plea agreement, please.

12        THE COURTROOM DEPUTY:  Yes, your Honor.

13        Mr. Bellettieri, I show you this plea agreement signed

14   today, February 15, 2007.  Is that your signature there?

15        THE DEFENDANT:  Yes, it is.

16   Q.   Mr. Bellettieri, have you reviewed the plea agreement with

17   your attorney before you signed it?

18   A.   Yes, I have, your Honor.

19        THE COURT:  Mr. Richman, did you review each and every

20   part of the plea agreement with your client?

21        MR. RICHMAN:  I have, your Honor.

22   Q.   Mr. Bellettieri, are you satisfied that you understand the

23   entire plea agreement which Mr. Richman has reviewed with you?

24   A.   Yes, I am, your Honor.

25   Q.   Do you have any questions, either for Mr. Richman or for

72fibelp ag                    PLEA

1   me, as to what this plea agreement says?

2   A.  No, I do not, your Honor.

3   Q.  Does the plea agreement contain the complete understanding

4   between you and the government in connection with this case?

5   A.  Yes, your Honor.

6   Q.  Do you understand that anything which is not set forth in

7   the plea agreement or which is not told to me at this time on

8   the record will not be binding on the outcome of your case?

9   A.  Yes, your Honor.

10      THE COURT:  Ms Dunne, is there anything beyond the

11  written plea agreement that the Court should be aware of?

12      MS DUNNE:  No, Judge, other than let me just clarify

13  that we have a restitution amount that could be as high as

14  $22,000,000.  We have not resolved exactly to the penny what

15  the restitution amount is as of the date of this plea.  We're

16  still working on it.  But it is going to be somewhere over

17  20,000,000 and probably it could be as high as 22,000,000.

18      THE COURT:  That dispute does not affect the

19  Sentencing Guidelines?

20      MS DUNNE:  It does not.

21      MR. RICHMAN:  Most respectfully, your Honor, there's

22  not truly a dispute.  We have yet to arrive at a method by

23  which we can determine the actual amount.  On paragraph 3 of

24  the first page of the plea agreement there's reference made in

25  subsection (1), a sum of money equal to no more than

72fibelp ag                    PLEA

1   $22,000,000.  That's how it actually should read.  We have not

2   been able to arrive at the actual numbers and there is a slight

3   possibility that it could be below 20,000,000, which is the

4   cutoff for the plea agreement.  So I'm just advising the Court

5   that there might be some small change in the general numbers in

6   this matter.

7          MS DUNNE:  On the restitution amount I would say yes,

8   because there has been some repayment.  However, I believe that

9   there's no way the loss will be under 20,000,000, because the

10  guidelines look at the intended loss without credit for

11  restitution payments that may have been made in the meantime.

12         MR. RICHMAN:  That's correct.

13         MS DUNNE:  Judge, if I may, I can give you an outline

14  of what I know for certain at this point the government would

15  prove as a loss, and those loss amounts are roughly 12.6

16  million dollars to one victim, the bank, that was the holder of

17  the Bellettieri accounts; roughly again approximately 7.6

18  million dollars in checks that were declined once the bank

19  realized what was going on and shut the account down; a private

20  client who lost approximately two million dollars; and then the

21  estimate being roughly one to two million other dollars worth

22  of checks that are out there that we haven't quite identified

23  at this point, the full arena of them.

24         So I believe there is no way -- and the amount to the

25  main victim, which is the 12.6 million, that number I give you

72fibelp ag                    PLEA

1    is after repayment of several repayment amounts that were

2    credited against that of over a million dollars.  There's no

3    way our intended loss is going to be under 20,000,000.

4          It's possible that the restitution figure may be under

5    20,000,000 but the loss figure will not be less than

6    20,000,000.

7          THE COURT:  Do you agree with that, Mr. Richman?

8          MR. RICHMAN:  I believe that's within the ballpark,

9    yes, your Honor.

10         THE COURT:  My concern is that my instructions from

11   Judge Brieant are that a plea is not acceptable unless the

12   guidelines are agreed to.  So it's important for me to know

13   whether you're agreeing that the loss is at least 20 million

14   dollars.

15         MR. RICHMAN:  We believe that to be the case.  Yes,

16   your Honor.

17         THE COURT:  Are you expecting him to admit to the

18   forfeiture allegation as well?

19         MS DUNNE:  Yes, Judge.

20         THE COURT:  The forfeiture allegation of course

21   references at least $22,000,000.  The plea agreement references

22   an order of restitution that is identified as could be as high

23   as $22,000,000.  And the plea agreement references the

24   forfeiture as being a sum equal to $22,000,000.  So I'm not

25   quite sure how these three things are intended to correspond to

72fibelp ag                PLEA

1    one another.

2        MR. RICHMAN:  I think it should be up to $22,000,000

3    would be the correct definition.

4        MS DUNNE:  I believe that's the case, Judge.  Quite

5    honestly, we have a forfeiture unit who put all of these three

6    different kinds of ways of describing it into the various

7    documents.  It was my understanding when I questioned the same

8    thing that the forfeiture allegation in the information has to

9    say at least a certain amount as opposed to up to a certain

10   amount because there has to be some sort of sum certain on the

11   judgment.  That's I believe why that language was put in there

12   like that.  My understanding is there will be ancillary

13   proceedings to locate and forfeit properties in addition to

14   those listed here if they come to light.  However, I also

15   understand that there is in the enforcement of the ancillary

16   proceedings some sort of give and take and in this case in

17   particular because Mr. Bellettieri is working with us to locate

18   assets and to resolve the issue of restitution.  I could be,

19   it's a technical inconsistency here but I can tell you that the

20   intent behind it is an up to 22,000,000 number.  We have no

21   reason to believe that it's going to be any higher than that.

22   This is basically the most it will be.

23       MR. RICHMAN:  That's exactly as I would put it, your

24   Honor.

25       THE COURT:  All right.  Any other agreements or

72fibelp ag                 PLEA

1   understandings that the Court should know about Mr. Richman?

2             MR. RICHMAN:  None, your Honor.

3   Q.  Mr. Bellettieri, did you sign the plea agreement freely and

4   voluntarily?

5   A.  Yes, I did, your Honor.

6   Q.  Did anyone force you or coerce you or threaten you or

7   promise you anything other than what is set forth in the

8   written plea agreement in order to get you to sign that plea

9   agreement?

10            MR. RICHMAN:  May I just amend something I said.

11  Ms Dunne's and I have agreed that part of the forfeiture will

12  be his home, but that in view of the fact that the home is

13  owned half by his wife that there will be a portion that will

14  be sold and the wife will receive an opportunity to have a

15  downsize of the house or half the assets of the house

16  afterwards.

17            MS DUNNE:  Judge, the issue is, in the forfeiture

18  proceedings we can only forfeit his interest in any property.

19  This is actual marital property.  In the course of our

20  investigation we actually saw some of the stolen funds going

21  into home improvements, a kitchen extension, swimming pool,

22  etc.  So we put it in the indictment with the understanding

23  from Mr. Richman that we will negotiate with the wife.  She can

24  file whatever process there is, but we will negotiate with them

25  to resolve the issue of the house.  We won't be seeking a

72fibelp ag                    PLEA

1   hundred percent forfeiture of it because he doesn't own a

2   hundred percent.  And I believe it's our policy in our office

3   in general with an innocent spouse that they will negotiate

4   something so that the spouse is not left completely homeless

5   out of the forfeiture provision.  They haven't had those

6   discussions yet, but when this plea is over, Mr. Richman will

7   have those discussions with our forfeiture unit and I'll get

8   involved if necessary.

9           MR. RICHMAN:  That's correct, your Honor.

10          THE COURT:  Thank you.

11  Q.  Mr. Bellettieri, did anyone force you or coerce you or

12  threaten you or promise you anything other than what's set

13  forth in the written plea agreement and which has been

14  discussed here today in order to get you to sign this plea

15  agreement?

16  A.  No, they have not.

17  Q.  If you're convicted of the charges set forth in this felony

18  information, either after trial or by plea of guilty, you would

19  be subject on Count 1 to a maximum term of imprisonment of 30

20  years, a maximum fine of $250,000 or twice the gross gain or

21  twice the gross loss resulting from the offense, whichever

22  amount is greater, a term of supervised release of up to five

23  years, a mandatory one hundred dollar special assessment, and

24  restitution or forfeiture in an amount as high as $22,000,000,

25  although you could not be ordered, you would not be subject to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

72fibelp ag              PLEA

 1   both amounts.  That is to say, it's either restitution or

 2   forfeiture and the amount could only be taken from you once.

 3        Under Count 2 you would be subject to a maximum term

 4   of imprisonment of 20 years, a maximum fine of $250,000 or

 5   twice the gross gain or twice the gross loss resulting from the

 6   offense, whichever amount is greater, a term of supervised

 7   release of up to five years, a mandatory one hundred dollar

 8   special assessment and again restitution and forfeiture, the

 9   total amount of which on both counts could not be higher than

10   $22,000,000.

11        If you're sentenced to a term of imprisonment, even if

12   you're sentenced to the maximum term of imprisonment and if

13   you're also sentenced to a term of supervised release and if

14   you then violate the conditions of supervised release, you

15   could be sentenced to an additional term of imprisonment of up

16   to three years on each count for violating the conditions of

17   your supervised release, which means that you face a total

18   maximum potential term of imprisonment of 50 years on the two

19   counts plus an additional six years should you violate the

20   conditions of supervised release.

21        In addition, if you violate the condition of

22   supervised release, you would not receive credit for time

23   already served in prison or for time served on supervised

24   release.  Do you understand that these are the possible

25   sentences that could be imposed following your plea of guilty

72fibelp ag                    PLEA

1   in this matter?

2   A.   Yes, your Honor.

3   Q.   Are you an American citizen?

4   A.   Yes, I am.

5   Q.   Do you understand that you are pleading guilty to a felony

6   offense and that such an adjudication may deprive you of

7   certain valuable civil rights, which may include the right to

8   vote, the right to hold public office, the right to serve on a

9   jury, the right to possess any type of firearm including rifles

10  and shotguns, the right to be considered for certain types of

11  employment or to be bonded, and the right to possess or obtain

12  certain government issued licenses, including licenses that may

13  be required in certain professions and occupations, including

14  the license to practice law.   Do you understand that?

15  A.   Yes, I do, your Honor.

16  Q.   Do you also understand that the Court may order you at your

17  expense to provide notice of your conviction to victims of the

18  offense?

19  A.   Yes, your Honor.

20  Q.   Do you understand that these are the possible legal

21  consequences of entering a plea of guilty in this case?

22  A.   Yes, I do.

23  Q.   Do you understand that the United States Sentencing

24  Commission has issued guidelines for judges to follow in

25  determining the appropriate sentence in a criminal case?

72fibelp ag                    PLEA

1    A.   Yes, I do.

2    Q.   Do you understand that these guidelines are not mandatory,

3    but they must be considered by the Court along with other

4    sentencing factors when the Judge determines the appropriate

5    sentence to impose?

6    A.   Yes, I do, your Honor.

7    Q.   Have you and Mr. Richman talked about how the Sentencing

8    Guidelines would be calculated in your case?

9    A.   Yes, we have, your Honor.

10   Q.   The plea agreement in this case sets forth a stipulated

11   sentencing range of 121 to 151 months and a stipulated fine

12   range of 17,500 to 175,000.  Do you understand that this is

13   simply an understanding between you and your attorney and the

14   attorney for the government, and that is not binding on the

15   district judge when he imposes sentence in this case?

16   A.   Yes, I do, your Honor.

17   Q.   Do you understand that Judge Brieant will consider the

18   guidelines, but he will impose a sentence in accordance with

19   the statute, which in this case means that the prison term on

20   Count 1 will be not more than 30 years and the prison term on

21   Count 2 will be not more than 20 years, and you could be

22   sentenced to a total maximum term of 50 years in prison, do you

23   understand that?

24   A.   Yes, I do.

25   Q.   Do you understand that the Court will not be able to

72fibelp ag                    PLEA

1    determine the appropriate sentence for your case until after a

2    presentence report has been prepared and you and your attorney

3    as well as the government have had an opportunity to challenge

4    the facts reported in the presentence report as well as the

5    calculation of the sentencing guideline range and any

6    sentencing recommendation in that report, do you understand

7    that?

8    A.   Yes, I do, your Honor.

9    Q.   Do you understand that if there are any objections to the

10   presentence report that those objections will be ruled on by

11   the Court, and if necessary, a hearing will be held to

12   determine what information is relevant to the Court's

13   determination of the sentence?   Do you understand that?

14   A.   Yes, I do, your Honor.

15   Q.   Do you understand that you would have the right to appeal

16   any sentence that is greater than the guidelines range set

17   forth in the plea agreement, and that the government would have

18   the right to appeal any sentence that is lower than the

19   guidelines range set forth in the plea agreement?   Do you

20   understand that?

21   A.   Yes, I do, your Honor.

22   Q.   Do you understand that one effect of the plea agreement is

23   that you are giving up other rights that you might have had to

24   appeal or otherwise attack the sentence imposed by the Court?

25   A.   Yes, I do, your Honor.

72fibelp ag                    PLEA

1          THE COURT:  Mr. Richman, have you specifically

2   reviewed with your client the first full paragraph on page 5 of

3   the plea agreement commonly referred to as the *Brady* waiver?

4          MR. RICHMAN:  Yes, your Honor.

5          THE COURT:  In reference to that paragraph, by

6   recommending the acceptance of this plea of guilty, if I should

7   do that, I make no determination or recommendation about the

8   enforceability of that particular paragraph.  In light of

9   certain Second Circuit decisions, including *U.S. v. Persico;*

10  *United States v. Avellino; Tate v. Wood,;* and *Miller v.*

11  *Angliker;* and notwithstanding the United States Supreme Court

12  decision in *U.S. v. Ruiz,* citations available upon request, I

13  have concerns about whether this clause in any particular case

14  would be enforceable.  And a recommendation that the plea

15  should be accepted should not be construed as an endorsement of

16  this paragraph of the plea agreement.

17  BY THE COURT:

18  Q.  Mr. Bellettieri, do you also understand that if you

19  disagree with the Court's sentencing decision, that will not

20  give you a basis for withdrawing your plea of guilty?

21  A.  I do, your Honor.

22  Q.  Do you understand that parole has been abolished, and if

23  you are sentenced to a term of imprisonment, you will not be

24  eligible for early release on parole?

25  A.  Can you say that again, your Honor.

72fibelp ag         PLEA

1   Q.  In the federal system, parole has been abolished.  If

2   you're sentenced to a term of imprisonment, you will not be

3   eligible for early release on parole.

4         MR. RICHMAN:  May I explain that to my client?

5         THE COURT:  Sure, take your time.

6         (Pause)

7   Q.  Do you understand that?

8   A.  Yes, I do, your Honor.

9   Q.  Do you understand that you do not have to plead guilty and

10  you have an absolute right to plead not guilty and to have the

11  matter go to trial by judge or by jury?

12  A.  Yes, I do, your Honor.

13  Q.  Do you understand that if you choose to plead not guilty,

14  you are entitled to have a speedy and public trial of your

15  case?

16  A.  Yes, I do, your Honor.

17  Q.  Do you understand that at any trial of this matter, you

18  would be entitled to the presumption of innocence, and that the

19  presumption would remain with you until the government proves

20  each and every element of any one or more of the crimes charged

21  beyond a reasonable doubt to the satisfaction of the judge, if

22  it's a judge trial, or to the unanimous satisfaction of the

23  jury, if it is a jury trial?  Do you understand that?

24  A.  Yes, I do, your Honor.

25  Q.  At such a trial you would have the right with the help of

72fibelp ag                PLEA

1    your attorney to confront and cross-examine the witnesses

2    against you; you would have the right to call witnesses to

3    testify for you; and to have subpoenas issued to compel

4    witnesses to give testimony.  You would also have the right to

5    testify at your trial, but you could not be forced to testify.

6    If you decided not to testify, your decision to remain silent

7    could not be held against you in any way.  At your trial would

8    you also have the right I have spoken of to the assistance of

9    an attorney and to have an attorney appointed to represent you

10   without fee if you could not afford counsel.

11        Do you understand that if you plead guilty to the

12   charges in this felony information, that you would give up your

13   right to a trial, and except for the right to counsel, which

14   you retain, you would also give up all the other rights which I

15   have explained to you here?

16   A.  Yes, I do, your Honor.

17   Q.  Have you clearly heard and fully understood everything I've

18   said to you?

19   A.  Yes, I have, your Honor.

20   Q.  Do you have any questions either for me or for your

21   attorney about anything I've said or about anything I've asked

22   you?

23   A.  I do not.

24        THE COURT:  Ms Dunne, what are the elements of the

25   offenses, and what is the government prepared to prove at trial

72fibelp ag                PLEA

1    in order to establish those elements?

2            MS DUNNE:  The elements for the first count, which is

3    bank fraud, is that the defendant knowingly executed a scheme

4    to defraud various financial institutions through false and

5    fraudulent pretenses.  The allegations of the mail fraud

6    provision are a scheme to defraud for the purpose of obtaining

7    money by fraud and the deposit of matters in the mail.

8            If this case were brought to trial, the government

9    would prove, be prepared to prove that the defendant defrauded

10   corporate and private clients of millions of dollars by an

11   orchestrating a check kite scheme with his corporate and escrow

12   accounts.  He was a partner at law firm of Bellettieri, Fonte

13   and Laudonio.  They were agents for banks and financials

14   institutions, receiving and dispersal agents for those banks.

15   They also received millions of dollars for distributions at

16   closings, refinancing and other related real estate

17   transactions.  In addition, they regularly received client

18   funds in connection with real estate transactions.

19           Over the period of the past approximately three years,

20   the defendant siphoned over 22,000,000 dollars from Bellettieri

21   Fonte and Laudonio's bank accounts by orchestrating a check

22   kite involving their operation and escrow accounts.  When it

23   was brought to a screeching halt by the main victim, the effect

24   was to have shifted the loss of his theft to that victim, the

25   bank that was holding his bank accounts, and where those bank

72fibelp ag          PLEA

1   accounts were maintained.

2        The evidence, if this case were to go to trial, would

3   show that the defendant used the stolen monies for his own gain

4   and the gain of others.  Specifically, he purchased real

5   estate, commercial real estate for himself and others, he

6   purchased interests and vacation properties, luxury properties,

7   he made home improvements as I referred to before in his

8   marital residence, among other things a kitchen extension and a

9   swimming pool.  He paid the personal credit card payments of

10  himself and others and firm payments.  He financed firm

11  extensions of high salaries of himself and others that the law

12  firm could not otherwise have sustained on a regular basis

13  because they weren't making enough income to make those

14  payments.  He financed a family wedding and he leased and

15  purchased automobiles for himself and others, among other

16  things that we've seen through the investigation.

17        In connection with Count 2, he had sort of a separate

18  scheme.  The mail fraud count is a bit of a separate scheme in

19  that he had a particular client whom he told that he was going

20  to invest the client's money in private mortgages and that the

21  client's money would be secured by interests in real property

22  located in various locations.  For the purpose of obtaining the

23  money from the client and to hide his theft of the client's

24  funds, he prepared phony mortgage documents so that the client

25  actually thought that he had interest in real property when he

72fibelp ag             PLEA

1    didn't.  The money was actually stolen by him.  And for the

2    purpose of orchestrating this scheme involving the private

3    client, he mailed what purported to be occasional mortgage

4    checks, mortgage payment checks and phony mortgage documents to

5    the client through the United States mail.

6         And with regard to the bank fraud count, let me just

7    say that two of the larger victims are commercial banks which

8    fall within the scope of what is defined by the statute, Title

9    18, as a financial institution.  However, there are others that

10   are mortgage brokers that also fall within the scope of the

11   definition for the purposes of the bank fraud.

12        In addition, the forfeiture allegation that is in the

13   information, Mr. Richman just before we started here called to

14   my attention one really omission which is paragraph 14(b).

15        MR. RICHMAN:  1301.

16        MS DUNNE:  I'm sorry (h) where it says at least

17   $30,000 in payments and he tells me it was actually a $130,000

18   payment for a condominium.  I just throw that out to your

19   Honor.

20        And the other thing is subparagraph (b) which refers

21   to a Visto Realty.  What we were getting at on that allegation

22   is defendant's interest in property located at 1803-1805 Edison

23   Avenue, Bronx, New York.  Mr. Richman tells me we have the

24   wrong corporate name in there.  But he does acknowledge that he

25   owns the property, has an interest in the commercial realty of

72fibelp ag                    PLEA

1   1803-1805 Edison Avenue, Bronx, New York.  However the

2   corporate names listed in subparagraph (b) are not accurate.

3        THE COURT:  Mr. Richman, do you agree with those two

4   modifications?

5        MR. RICHMAN:  Yes, your Honor, we provided them to the

6   United States Attorney's Office.

7        THE COURT:  Ms Dunne, I realize I should have made

8   this inquiry previously.  I'm a bit confused.  With regard to

9   the bottom paragraph on the first page of the plea agreement

10  that goes over to the top of the second page, it indicates that

11  any forfeiture of the defendant's assets shall not be treated

12  as satisfaction of any restitution that the Court may impose.

13  And that's not my understanding of the law.  The government

14  doesn't get double the money, they don't get to double dip in

15  terms of any recoupment.  That forfeiture should satisfy

16  restitution.

17       MS DUNNE:  This is again an issue I raised with my

18  forfeiture unit.  I understand this is the standard language we

19  use.  We have major victims here.  There may be a case where

20  you don't have major victims and there's surplus substituted

21  assets out there.  I do anticipate here that the major victims

22  in this case will be making an application for the forfeited

23  funds and we'll be facilitating that.  I have no reason to

24  believe that that will not happen.  But I believe the law

25  technically does not require it and that's why the language is

72fibelp ag              PLEA

1   the way it is in this plea agreement.  And it's a process which

2   our office will be involved in continuing through the future.

3   Q.  Did you hear what the assistant United States attorney just

4   said, Mr. Bellettieri?

5   A.  Yes, your Honor.

6   Q.  How do you wish to plead to the charge of bank fraud as set

7   forth in the pending felony information?

8   A.  Guilty.

9   Q.  How do you wish to plead to the charge of mail fraud as set

10  forth in the pending criminal information?

11  A.  Guilty.

12  Q.  And do you also admit to the forfeiture allegation which is

13  included in the felony information as verbally modified by the

14  assistant United States attorney?

15  A.  Yes, I do, your Honor.

16  Q.  Has anyone threatened you or coerced you or pressured you

17  improperly in order to get you to plead guilty to these charges

18  and to admit to this forfeiture allegation?

19  A.  No, they have not.

20  Q.  Has anyone made any specific promise to you about what the

21  sentence of the Court will be?

22  A.  No.

23  Q.  Mr. Bellettieri, tell me in your own words what you did to

24  commit these crimes.

25  A.  What I did is over the last number of years, I was covering

72fibelp ag                PLEA

1    overdrafts in our mortgage closing accounts and I wrote checks

2    out of a controlled disbursement account and deposited it into

3    the funding account.

4    Q.  Were those checks which you were entitled to use for that

5    purpose?

6    A.  No, your Honor.

7    Q.  Did this occur between 2003 and November of 2006?

8    A.  Yes, your Honor.

9            MR. RICHMAN:  Actually, your Honor, it does go back

10   even further than that.  It's covering and covering.

11   Q.  In any event, through November of 2006?

12   A.  Yes, your Honor.

13   Q.  Did that include using a series of linked bank accounts at

14   JP Morgan Chase that were maintained by the law firm?

15   A.  Yes, your Honor.

16   Q.  And in doing so, did you take for your own purposes and for

17   the purposes of others and for the purposes of the firm monies

18   to which neither you nor those others nor the firm were

19   entitled?

20   A.  Yes, your Honor.

21           THE COURT:  Ms Dunne, is there an amount for the bank

22   fraud, total amount of the bank fraud?

23           MS DUNNE:  It's going to be roughly in the area of

24   20,000,000 I believe when we're all said and done.  It's again

25   in that region.  With that plus the mail fraud involving the

72fibelp ag          PLEA

1   other client it will bring us over 20,000,000.

2   Q.  Mr. Bellettieri, did the total amount of the overdraft

3   scheme that you were engaged in that you've described total

4   between 18 and $20,000,000?

5   A.  Yes, your Honor.

6   Q.  Where were you when you did these things?

7   A.  Westchester County.

8   Q.  Is that where the accounts were also maintained?

9   A.  Yes, your Honor.

10  Q.  And that's where your firm was as well?

11  A.  Yes, your Honor.

12  Q.  Did you utilize some of the benefits of this scheme for

13  your own personal purposes?

14  A.  Yes, your Honor.

15  Q.  And did that include certain home improvements on your

16  personal residence as well as the lease and purchase of

17  multiple automobiles?

18        (Counsel confers with his client)

19        MR. RICHMAN:  Your Honor, to explain that particular

20  position, he would deposit the money to his account from the

21  firm, and he would use the money.  It was not directly from the

22  bank.  But in the final analysis, that's what happened.

23  Q.  So the value of it was used for your own personal benefit,

24  is that fair to say?

25  A.  Yes, your Honor.

72fibelp ag                    PLEA

1              (Counsel confers with his client)

2              MR. RICHMAN:   Only that portions of those payments,

3    your Honor, he informs me came from a home equity loan as well.

4    But in the main, the money came from Chase.

5              MS DUNNE:   If I may, the home equity loan was then

6    repaid by the stolen money.

7    Q.   Is that correct, Mr. Bellettieri?

8    A.   Substantially, your Honor.

9              (Counsel confers with his client)

10   A.   Yes, your Honor.

11   Q.   And in engaging in this scheme, is it correct to say that

12   you on your own behalf and on behalf of the others that we've

13   talked about obtained property and money that was under the

14   custody and control of financial institutions by engaging in

15   false and fraudulent pretenses?

16   A.   Yes, your Honor.

17   Q.   Do you concede that the institutions in question constitute

18   financial institutions as envisioned by the statute?

19   A.   Yes, your Honor.

20             (Counsel confers with his client)

21   Q.   Did you also engage in a scheme with regard to a private

22   client involving inducing the client to invest his funds in

23   what were purported to be private mortgages?

24   A.   Yes, your Honor.

25   Q.   Was that in or before 2003 through November of 2006?

72fibelp ag          PLEA

1   A.  Yes, your Honor.

2   Q.  And did you for that purpose induce the client to permit

3   the use of certain monies under false pretenses?

4   A.  Yes, your Honor.

5   Q.  And for purposes of engaging in this scheme, did you either

6   mail or cause to be mailed certain documents and other things

7   in order to carry this scheme out?

8   A.  Yes, your Honor.

9   Q.  And that would include things that were mailed to the

10  client, for example, to cause the client to believe that these

11  private mortgages in fact existed when they did not, is that

12  fair to say?

13  A.  Yes, your Honor.

14  Q.  And did the amount of money involved constitute

15  approximately $2,000,000?

16  A.  Yes, your Honor.

17          MR. RICHMAN:  Just under 2,000,000, your Honor.

18  Q.  Is that correct, Mr. Bellettieri?

19  A.  Yes, your Honor.

20  Q.  Were you also in Westchester County when you engaged in

21  this activity?

22  A.  Yes, your Honor.

23  Q.  Did you commit these acts knowingly and willfully?

24  A.  Yes, your Honor.

25  Q.  Did you know it was against the law to do what you were

72fibelp ag                    PLEA

1  doing?

2  A.  Yes, your Honor.

3          THE COURT:  Is there anything else which either

4  counsel believes the Court needs to elicit from the defendant

5  before making the recommendation contemplated by Rule 11?

6  Ms Dunne?

7          MS DUNNE:  No, your Honor.

8          THE COURT:  Mr. Richman?

9          MR. RICHMAN:  No.

10          THE COURT:  Mr. Richman, do you know of any reason why

11  the Court should not recommend acceptance of your client's plea

12  of guilty.

13          MR. RICHMAN:  I do not.

14          THE COURT:  Ms Dunne?

15          MS DUNNE:  None that I know of, your Honor.

16  Q.  I should perhaps inquire with specificity as to the

17  forfeiture allegation.  Mr. Bellettieri, do you understand that

18  a part of the plea agreement to which you have committed

19  yourself is that you will agree not only to forfeit the

20  specific property that's set forth in the forfeiture

21  allegation, but that you will not file any claim or petition to

22  remit or mitigate any of the specific property, and you will

23  also take all necessary steps including executing any necessary

24  documentation to pass clear title to the United States in

25  connection with those forfeiture allegations?  Do you

72fibelp ag                    PLEA

1    understand that?

2    A.  Yes, your Honor.

3    Q.  Mr. Bellettieri, in light of everything that has been said

4    here today, is it still your wish to plead guilty to the count

5    of mail fraud as set forth in the felony information?

6    A.  Yes, your Honor.

7    Q.  Is it still your wish to plead guilty to the count of bank

8    fraud as set forth in the felony information?

9    A.  Yes, your Honor.

10   Q.  Is it still your wish to admit to the forfeiture allegation

11   as set forth in the felony information?

12   A.  Subject to the discussion that we had.

13   Q.  Subject to the discussion and the conditions that were set

14   forth here.

15   A.  Yes, your Honor.

16        THE COURT:  Upon this allocution, I find that the

17   defendant Anthony Bellettieri is fully competent and capable of

18   entering an informed plea.  The plea is knowing and voluntary

19   and is supported by an independent factual basis for each and

20   every element of the crimes charged.

21        Accordingly, I respectfully report and recommend to

22   Judge Brieant that the plea should be accepted and that the

23   defendant should be adjudged guilty of the offenses charged in

24   the felony information.

25        Pursuant to Title 28, United States Code, Section

72fibelp ag                    PLEA

1    636(b)(1) and Federal Rules of Civil Procedure 72(b) and 6(a),

2    the parties have a total of ten working days from today's date

3    to file written objections to this report and recommendation.

4    Such objections, if any, shall be filed with the Clerk of the

5    Court with additional copies delivered to the chambers of the

6    Honorable Charles L. Brieant and to my chambers both here in

7    this courthouse, 300 Quarropas Street, White Plains, New York.

8    Failure to file timely objections will preclude later appellate

9    review of any order of judgment that will be entered relating

10   to this report and recommendation.  Requests for extensions of

11   time to file objections must be made to Judge Brieant

12            I direct that a presentence investigation be conducted

13   by the United States Department of Probation.

14            Mr. Bellettieri, after this proceeding, you must go to

15   the Department of Probation on the ground floor of this

16   building and your attorney must accompany you.  Either today or

17   on some other day that will be scheduled, you will be

18   interviewed by a representative of the Department of Probation.

19   I'm sure that Mr. Richman will assist you in connection with

20   that interview and you're entitled to have him present during

21   the interview if you wish.  You must be fully honest and

22   truthful during that interview, because if it comes to the

23   Court's attention that you have filed false or misleading

24   information, that will be held against you at the time of

25   sentencing.  Do you understand that?

72fibelp ag                    PLEA

1        THE DEFENDANT:  Yes, I to do, your Honor.

2        THE COURT:  I further direct the court reporter to

3   prepare a transcript of these proceedings within 30 days

4   setting forth my report and recommendation to Judge Brieant.

5   The transcript is to come to me for review.

6        The matter is set for sentenced on May 18, 2007, at

7   nine a.m.

8        MR. RICHMAN:  I have a scheduled trial on that date.

9   I recognize the likelihood that there will be adjournments.

10       THE COURT:  What I suggest is that when it gets closer

11  to that date you might reschedule with Judge Brieant's chambers

12  to find an appropriate date.  That's the date we were given by

13  Judge Brieant.  In any event you would want to confirm the date

14  and time prior to that date.

15       Anything else Ms Dunne?

16       MS DUNNE:  No, your Honor.

17       THE COURT:  Mr. Richman?

18       MR. RICHMAN:  No, your Honor.

19       THE COURT:  Very well.  We're adjourned.

20       (Proceedings adjourned)

21

22

23

24

25