UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FINANCIAL FREEDOM SENIOR FUNDING
CORP.,

                     Plaintiff,

  -v-

BELLETTIERI, FONTE & LAUDONIO, P.C.,
ANTHONY BELLETTIERI, ROBERT FONTE,
TARA LAUDONIO,

                     Defendants.

Case No. 07-CV-3591 (KMK)

OPINION AND ORDER

Appearances:

David John Galalis, Esq.
Feldman Weinstein LLP
New York, NY
*Counsel for Plaintiff*

Eric Weinstein, Esq.
Ellenoff Grossman & Schole LLP
New York, NY
*Counsel for Plaintiff*

Neal Sanford Comer, Esq.
White Plains, NY
*Counsel for Defendant Fonte*

KENNETH M. KARAS, District Judge:

      Plaintiff Financial Freedom Senior Funding Corporation ("Plaintiff") has filed a Motion for Summary Judgment on Counts IV and V of its Complaint only against individual defendant Robert Fonte ("Defendant"). Count IV alleges that Defendant committed attorney malpractice and breached his fiduciary duty to Plaintiff, while Count V alleges that Defendant was negligent

in his work on behalf of Plaintiff. Plaintiff asks the Court to apply the doctrine of collateral estoppel against Defendant with respect to prior adverse findings from an attorney disciplinary proceeding and their subsequent confirmation by the Appellate Division of the New York state courts ("Appellate Division"). For the reasons stated herein, the Motion for Summary Judgment is denied.

I. Background

For the purposes of this Motion, the following facts are salient. Plaintiff is a reverse-mortgage lender. (Pl.'s Local Rule 56.1 Statement of Facts ("Pl.'s 56.1") ¶ 1.) Defendant Fonte and Anthony Bellettieri ("Bellettieri") were both shareholders and partners in the law firm Bellettieri, Fonte & Laudonio, P.C. ("BF&L"). (Def.'s Local Rule 56.1 Statement of Facts ("Def.'s 56.1") ¶ 4.)[1] The law firm's business included acting as an agent for several mortgage lenders. Plaintiff was among those lenders and Defendant was its attorney for closings on its mortgage loans. (Def.'s 56.1 ¶ 11.) Pursuant to this arrangement, Plaintiff would issue closing instructions and wire funds to a BF&L escrow account for the purpose of funding reverse-mortgage loans. (*Id.* ¶¶ 12, 13.) Defendant would then conduct the closings and issue disbursement checks. (*Id.* ¶ 14.) Plaintiff alleges that between October 1 and November 17, 2006, the issued disbursement checks were not honored due to insufficient funds in the BF&L escrow, and resulting in damages of $311,000.09. (*Id.* ¶¶ 16, 17.)

---

[1] Defendant argues that he was not an "equal partner" with Bellettieri, but does not refute that he was a shareholder in the law firm. (Def.'s 56.1 ¶ 4; Pl.'s 56.1 ¶ 4.) Moreover, Defendant held himself "out to the world as [a] named partner[] of the firm." (Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Mem."), Ex. A (Report of Steven C. Krane, Special Referee ("Ref. Rep.")) 14.)

Plaintiff's loss allegedly resulted from a "fraudulent check kiting scheme" by Bellettieri which culminated in a "roughly $17 million dollar overdraft" on BF&L's account.  (Def.'s Mem. of Law in Opp. to Pl.'s Mot. for Summ. J. ("Def.'s Mem."), Ex. A (Report of Steven C. Krane, Special Referee ("Ref. Rep.")) 2.)  In sum, Bellettieri, a former JP Morgan Chase Bank Vice-President, exploited a routing number error in the checks issued by that financial institution to BF&L's disbursement account.  (Ref. Rep. 2, 12.)  Due to the routing number error, there was a "brief window of opportunity" during which "the same funds simultaneously appeared as available" in two different accounts.  (*Id*. at 12.)  Bellettieri then wrote checks from these accounts for "his personal use before the clearance period caught up with the deposit."  (*Id*.)  To avoid detection and further advance the fraud, "Bellettieri had to write a series of similar checks, in ever-increasing amounts, every day" during the scheme.  (*Id*. at 12-13.)  Bellettieri was eventually prosecuted for these acts, sentenced to a 10-year federal prison term, and disbarred.  (*Id*. at 2.)

The Grievance Committee for the Ninth Judicial District ("Grievance Committee") also instituted disciplinary proceedings against Defendant, an attorney, on five charges:

> Charge one alleges that the [Defendant] was guilty of a breach of fiduciary duty and a failure to safeguard and ensure the transactional integrity of funds entrusted to him, incident to his practice of law in his attorney special accounts, in violation of Code of Professional Responsibility DR 9-102 (a) ( 22 NYCRR 1200.46 [a]).
> . . . .
> Charge two alleges that the [Defendant] failed to promptly pay or deliver funds, which were placed in his possession by clients for disbursement to third parties, to the clients or to third parties entitled to receive them, in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]), based on the factual specifications of charge one.  The [Defendant]'s failure to discover Bellettieri's escrow fund theft resulted in the dishonorment of numerous checks issued from the attorney special accounts of BF&L.
> . . . .
> Charge three alleges that the [Defendant] failed to make reasonable efforts to adequately supervise Bellettieri's work and to ensure that all lawyers in BF&L were

> conforming to the disciplinary rules, in violation of Code of Professional Responsibility DR 1-104 (a)-(c) and (d) (2) (22 NYCRR 1200.5 [a]-[c], [d] [2]), by failing to adequately oversee the transactional activity of one or more of BF&L's special accounts, based on the factual specifications of charges one and two.
>
> . . . .
>
> Charge four alleges that the [Defendant] engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), by failing to timely respond to the lawful demand for his written response to one or more complaints of professional misconduct, based on the factual specifications of charges one and two.
>
> . . . .
>
> Charge five alleges that the [Defendant] engaged in other conduct that adversely reflects upon his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by failing to adequately oversee the transactional activity of one or more of BF&L's attorney special accounts and/or to cooperate with the Grievance Committee's investigation into those allegations, based on the factual specifications of all of the aforesaid charges.

*In re Fonte*, 905 N.Y.S.2d 173, 175-177 (App. Div. 2010).

A Special Referee ("Referee") held proceedings to address these charges. The Referee found that Defendant was "certainly [a] victim[] of Mr. Bellettieri's fraudulent scheme," but was also "uniquely positioned to prevent or put an end to that scheme and minimize the damage that was ultimately caused to those who had entrusted funds to [BL&F.]" (Ref. Rep. 13.) The Referee further found that Defendant had "never asked to audit or review any of the records associated with" BL&F's accounts, despite being a signatory on the accounts and a fiduciary "responsible for the safekeeping of funds held therein." (*Id.*) While observing that "[t]his failure might have been attributed to mistaken trust in [a] senior partner," the Referee also noted that Defendant "ignored warning signs that Mr. Bellettieri could not be trusted to handle escrow funds properly and should be monitored." (*Id.*) The most telling of these warning signs occurred when Defendant learned that six fraudulent checks had been cashed against a BL&F escrow account for a defalcation of $900,000 and Bellettieri, rather than providing necessary banks records to an accountant that Defendant had hired to examine the matter, advised

Defendant that he would draw upon his personal line of credit to replenish the missing funds and later seek their recovery – even though this would unethically commingle personal funds with funds held in trust for others. (*Id.* at 9.) Overall, the Referee concluded that Defendant had "blindly and unreasonably relied on the presumed honesty" of Bellettieri and recommended that all the charges be sustained. (*Id.* at 14.)

Upon a motion by the Grievance Committee, contested by Defendant, the Referee's report was subsequently confirmed by the New York Appellate Division. *In re Fonte*, 905 N.Y.S.2d at 177. In moving for confirmation, the Grievance Committee "expressed strong disagreement with the Special Referee's conclusion . . . that [Defendant] was a victim" of the check kiting scheme and argued that Defendant "displayed a long-term, near total ignorance of his fiduciary duties . . . [and] ignored multiple warning signs and blatantly apparent indicators of criminality." *Id.* at 176-77. Notably, although the Appellate Division confirmed the Referee's recommendation, it did not accept this view of the Grievance Committee, observing that Defendant "was, to some extent, victimized by Bellettieri," but was "also uniquely positioned to put an end to Bellettieri's scheme and thereby minimize damage to [BF&L] clients." *Id.* at 177. Both the Special Referee and the Appellate Division discussed the check kiting scheme in toto without addressing the specifics of Plaintiff's transactions. The Appellate Division suspended Defendant from the practice of law for three years. *Id.*

Plaintiff commenced this action on May 4, 2007, (Dkt. No. 1), and Defendants Fonte and Laudonio filed an Answer on August 15, 2007, (Dkt. No. 10). Plaintiff filed the present motion for summary judgment on Count IV ("Attorney Malpractice/Breach of Fiduciary Duty) and Count V (Negligence) of the Complaint against Defendant Fonte on February 16, 2011. (Dkt. No. 15). The motion was fully submitted on August 3, 2011. (Dkt. No. 29.)

II.  Discussion

A. Standard of Review

Summary judgment may be granted where it is shown "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court must draw all reasonable inferences in the nonmovant's favor).

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted).  "When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").  "A fact is 'material' when it might affect the outcome of the suit under governing law." *McCarthy v. Dun*

*& Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). A court's goal should be "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

### B.  Analysis

Grounding its argument in offensive collateral estoppel, Plaintiff seeks summary judgment on Count IV ("Attorney Malpractice/Breach of Fiduciary Duty") and Count V (Negligence) of its Complaint. (Pl.'s Mem. 1, 6-7.) Specifically, Plaintiff claims that the "findings [of the Appellate Division] mirror and confirm the allegations in the Complaint in this action" and that "the issues litigated the (sic) prior action are identical to and decisive of the issue in the instant action." (*Id.* at 7.)

"Under the doctrine of offensive collateral estoppel . . . , a plaintiff may foreclose a defendant from relitigating an issue the defendant has previously litigated but lost against another plaintiff." *See S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 303 (2d Cir. 1999); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (distinguishing offensive and defensive collateral estoppel). The Supreme Court has cautioned that courts should exercise their discretion in applying offensive collateral estoppel to ensure that its use would not be unfair to defendants, particularly in cases where the plaintiff easily could have joined the prior action. *Parklane*, 439 U.S. at 651-52; *see also Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91-92 (2d Cir. 2005) (noting "broad discretion" courts have in deciding whether offensive collateral estoppel should be applied). Here, Defendant makes no argument that it would be unfair to apply offensive collateral estoppel to him. Rather, he argues that the disciplinary

proceedings should not have the preclusive effect sought by the Plaintiff here.

As a general matter, a party invoking collateral estoppel must demonstrate the identity of the issues in the prior and current actions and must establish that the issues were previously decided on the merits. *See Lefkowitz v. Bank of N.Y.,* 676 F. Supp. 2d 229, 271 (S.D.N.Y. 2009); *Pack v. Artuz*, 348 F. Supp. 2d 63, 70 (S.D.N.Y. 2004). On the other hand, the party seeking to defeat the application of collateral estoppel has the burden of establishing the absence of a full and fair opportunity to litigate the issues in the prior action. *Lefkowitz*, 676 F. Supp. 2d at 271; *see also Kaufman v. Eli Lilly & Co.*, 482 N.E.2d 63, 67 (N.Y. 1985).

Counts IV and V collectively allege that Defendant committed attorney malpractice, breached his fiduciary duty to Plaintiff, and was negligent. To succeed on any of these causes of action relies requires proof, inter alia, that Defendant owed Plaintiff a specific duty, that the duty was breached, and that Defendant's breach caused harm to Plaintiff. *See Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (App. Div. 2007) ("In order to establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendants misconduct." (internal citations omitted)); *Penberg v. HealthBridge Mgmt.*, No. 08-CV-1534, 2011 WL 4943526, at *14 (E.D.N.Y. Oct. 17, 2011) (same); *see also Achtman v. Kirby*, *McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (noting that to prevail on a claim for legal malpractice under New York law, a plaintiff must establish: "(1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages" (emphasis in the original)). Indeed, Plaintiff has not set forth a theory of negligence in Count V based upon the breach of any other duties not already encompassed in Count IV and, in fact, seeks identical damages, arising from the same set of facts. Thus, the analysis of whether Defendant should prevail is the same for both counts. *See In re Food Mgmt.*

*Grp., LLC*, 380 B.R. 677, 706 n.12 (Bnkr. S.D.N.Y. 2008) ("[C]laims against lawyers for breach of fiduciary duty or professional negligence are for most practical purposes the same claim with different labels."); *Am. Tissue, Inc. v. Arthur Andersen, L.L.P.*, 275 F. Supp. 2d 398, 405 n.7 (S.D.N.Y. 2003) (same); *see also NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) ("Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." (internal quotation marks and alterations omitted)); *Amadasu v. Ngati*, No. 05-CV-2585, 2006 WL 842456, at *9 (E.D.N.Y. Mar. 27, 2006) (finding negligent performance, breach of fiduciary duty, and gross negligence claims duplicative of legal malpractice claim).[2]

The question, then, is whether the Referee's report and the subsequent confirmation of that Report by the Appellate Division should have the effect of precluding Defendant from challenging the elements of the malpractice, fiduciary duty, and negligence claims brought against him. The focus of the debate between the Parties on this point centers on the causation element. Plaintiff urges the Court to deviate from the traditional element of proximate cause required to prevail on its claim. In particular, Plaintiff argues that this case "involv[es] the safekeeping of funds" and that in such cases, the Second Circuit has "lowered the standard from proximate causation to 'substantial factor causing the loss.'" (Pl.'s Reply 3 (citing *Malmsteen v.*

---

[2] There may be a question about whether Plaintiff can proceed or recover under both causes of action, a question that need not be answered now. *See Conway v. Icahn & Co.*, 16 F.3d 504, 511 (2d Cir. 1994) (noting that "separate awards" for negligence and breach of fiduciary duty "were duplicative and therefore impermissible"); *Sonnenschine v. Giacomo*, 744 N.Y.S.2d 396, 398 (App. Div. 2002) ("Plaintiffs' remaining causes of action for breach of contract and fiduciary duty and intentional and negligent misrepresentation allege the same operative facts as the cause of action for legal malpractice, and, accordingly, were also properly dismissed for failure to state a cause of action.").

*Berdon*, *LLP*, 595 F. Supp. 2d 299, 308 (S.D.N.Y. 2009), *aff'd,* 369 F. App'x 248 (2d Cir. 2010)).)  The Court does not agree.

Surveying Second Circuit and New York jurisprudence in this area, then-Judge Sotomayor explained that while "breach of fiduciary duty cases comprise a special breed of cases that often loosen normally stringent requirements of causation and damages," under New York law, "the level of causation required in breach of fiduciary duty and breach of contract cases depends on the type of remedy sought."  *LNC Inv., Inc. v. First Fid. Bank, N.A.,* 173 F.3d 454, 465-466 (2d Cir. 1999) (internal quotation marks omitted).  Thus, "[w]here the remedy sought is damages to compensate for a claimant's loss, the usual damages-causation rule for tort and contract breach cases is appropriate[,] but where the remedy being sought is a restitutionary one to prevent the fiduciary's unjust enrichment as measured by his ill-gotten gain, the less stringent substantial factor standard may be more appropriate."  *Id.* (alterations and internal quotation marks omitted) (citing *Am. Fed. Grp., Ltd. v. Rothenberg*, 136 F.3d 897, 907 n.7 (2d Cir. 1998)); *see also Nordwind v. Rowland*, 584 F.3d 420, 433 (2d Cir. 2009) (quoting *LNC* for the proposition that "if the remedy sought by the plaintiffs is a restitutionary one to prevent the fiduciary's unjust enrichment, the less stringent substantial factor standard would apply to the causation element of the claim for breach of fiduciary duty . . . [o]therwise, where damages are sought for breach of fiduciary duty under New York law, the plaintiff must demonstrate that the defendant's conduct proximately caused injury in order to establish liability" (citations and internal quotation marks omitted)); *In re Refco Inc. Secs. Litig.*, No. 08-CV-7416, 2011 WL 1219265, at *25 (S.D.N.Y. Mar. 30, 2011) (noting that where "damages are sought for breach of fiduciary duty" a claimant must show "proximately caused injury"); *Semi-Tech Litig., LLC v. Bankers Trust Co.,* 353 F. Supp. 2d 460, 482 (S.D.N.Y. 2005) (noting that the proximate cause

requirement applies "where compensatory damages are sought for a breach of fiduciary duty under New York law"), *aff'd*, *In Re Bankers Trust Co.*, 450 F.3d 121 (2d Cir. 2006).

The factual findings made about Defendant's fiduciary duty breach do not support a finding that Defendant reaped a windfall through "unjust enrichment as measured by his ill-gotten gain."[3]  *LNC,* 173 F.3d at 465.  Indeed, both the Referee and the Appellate Division explicitly acknowledged, Defendant was, at least to some extent, himself a victim of Mr. Bellettieri's fraud.  Moreover, Counts IV and V do not allege that Defendant was unjustly enriched at its expense.[4]  Instead, under these counts, Plaintiff only seeks damages to compensate for its loss under the check kiting scheme, rather than monies derived by Defendant through unjust enrichment.  (Compl. ¶ 108 ("[t]hese breaches of the duty of professional care were the proximate cause of [Plaintiff's] loss").)  Therefore, the traditional notion of proximate cause is the appropriate standard to apply in evaluating Plaintiff's breach of fiduciary duty claim.  *See LNC,* 173 F.3d at 465 (finding the district court's proximate cause charge to the jury appropriate where plaintiffs sought "damages to compensate them for injuries allegedly sustained as a result of the [defendants'] imprudence").

---

[3] The Appellate Division did find that Defendant "was comfortably drawing approximately $7,000 per week from BF & L during the period in question and knowingly permitted Bellettieri's commingling in order to allow BF & L to continue operating." *In re Fonte*, 905 N.Y.S.2d at 177.  Given that the bulk, if not the entirety, of the funds reaped from check-kiting scheme were diverted to Bellettieri's "personal use," (Ref. Rep. 12), however, this finding simply does not sustain a claim that Defendant, at least in the absence of more specific findings by the Appellate Division, "was enriched at the plaintiff's expense." *See Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 361 (S.D.N.Y. 1998).

[4] The Complaint states a separate claim for unjust enrichment in Count VI, which is not before the Court on the current motion.  (Compl. ¶¶ 113-117.)

While "[a]ny discussion of proximate cause should be approached with some trepidation because . . . no topic is subject to more disagreement or such confusion," *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999), it is well-established that one element of proximate causation is foreseeability, *see Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Secs. LLC,* 568 F.3d 374, 381 (2d Cir. 2009) ("To plead proximate cause, the complaint must allege that Plaintiffs' injury was a direct or reasonably foreseeable result of [Defendant's] conduct."); *Semi-Tech Litig.,* 353 F. Supp. 2d at 483 (noting that proximate cause "turns on such inherently factual questions as foreseeability").

Plaintiff argues that the proceedings before the Referee established "as a matter of law" that Defendant's acts proximately caused Plaintiff's damages. (Pl.'s Reply 3.) Specifically, Plaintiff argues that "Bellettieri misappropriated the escrow funds. The misappropriation was reasonably foreseeable to Fonte. Obviously, Fonte's established failure to prevent the theft caused the loss." (*Id.*) This argument simply assumes its conclusion. There are no explicit findings of proximate causation or reasonable foreseeability in either the disciplinary hearings or the Appellate Division regarding Plaintiff's transactions. Moreover, while the Grievance Committee alleged that Defendant "ignored multiple warning signs and blatantly apparent indicators of criminality," the Appellate Division did not adopt these arguments, holding only that Plaintiff was "uniquely positioned to put an end to Bellettieri's scheme and thereby minimize damage to clients who had entrusted funds to BF & L." *In re Fonte*, 905 N.Y.S.2d at 177. The Appellate Division's decision not to endorse the Grievance Committee's allegation fatally undercuts Plaintiff's argument that the prior proceedings established reasonable

foreseeability and proximate cause in this case.[5] Thus, the question of whether Defendant's conduct proximately caused Plaintiff's damages remains one for a fact-finder. *See In re Refco Inc. Secs. Litig.*, 2011 WL 1219265, at *26 ("Questions of proximate cause are generally left to the jury."); *Am. Tissue, Inc. v. Donaldson, Lufkin & Genrette Secs. Corp.*, 351 F. Supp. 2d 79, 91 (S.D.N.Y. 2004) (noting that "proximate causation generally remains an issue of fact for the jury"). Therefore, Plaintiff's summary judgment motion is denied.

### III. Conclusion

For the reasons stated herein, Plaintiff's motion for partial summary judgment is denied. The Clerk of Court is respectfully directed to terminate the pending motion. (Dkt. No. 29.)

SO ORDERED.

Dated:    White Plains, New York
          March 30, 2012

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[5] The Referee's finding that Defendant "ignored warning signs that [Bellettieri] could not be trusted to handle escrow funds properly and should be monitored" likewise does not establish that Defendant could have reasonably foreseen that Bellettieri would commit the specific acts that harmed Plaintiff. (Ref. Rep. 13.)

Service List by ECF:

David John Galalis, Esq.
Feldman Weinstein, LLP
420 Lexington Ave., Ste. 2620
New York, NY 10170
(212) 931-8715
dgalalis@feldmanweinstein.com
Counsel for Plaintiff

Eric Weinstein, Esq.
Ellenoff Grossman & Schole, LLP
150 East 42nd Street, 11th Fl.
New York, NY 10017
(212) 370-1300
eweinstein@egsllp.com
Counsel for Plaintiff

Neal Sanford Comer, Esq.
Neal S. Comer, Attorney at Law
445 Hamilton Avenue
White Plains, NY 10601
914-683-5400
Comeresq@aol.com
Counsel for Defendant Fonte
Counsel for Defendant Laudonio